Without argument, later today on the briefs, namely, Appeal No. 07-7117, Woods v. Department of Veterans Affairs, and Appeal No. 07-3118, Daniel v. Office of Personnel Management. On the four-case argument list, we'll hear argument first in Appeal No. 06-1637, Capitol Bridge v. IVL Technologies. Before we begin, the Court wishes to express thanks to Judge Bucklow from the Northern District of Illinois, who is a member of our panel today, as also yesterday, by designation by the Chief Justice of the United States. So welcome to you, Judge Bucklow, and thank you for the help. Mr. Womley, good morning to you. Good morning. Please proceed. My name is Brian Longstreet, I'm the law firm of the Brooklyn Proctor LLC. I'm your office counsel for the plaintiff appellant, Capitol Bridge. You replaced Mr. Handel, is that correct? Yes. And approximately when was that? Monday. I see. So you're proceeding on the blue and gray brief filed by Mr. Handel? That's correct. All right. And you've entered an appearance? Yes, I have. Very well. Okay. Please proceed. Thank you. An appeal from a vending of summary judgment in favor of defendants. Getting right to the point of this case, the issue is claim construction. Our position is that the district court improperly construed the claims predicated primarily on an incorrect or misapplied prosecution history interpretation, and leading to the incorrect application of the all elements rule to exclude the possibility of infringement by the doctrine of equivalence. Well, I take it that the essence of that part of the holding of the district judge was that it would effectively erase or vitiate the claim element requiring wireless transmission if it was allowed to have a wired device be deemed an equivalent. And that seemed to be a very clearly established principle, not just by this court, but also by the Supreme Court in the Warner-Jenkinson case, for example. That's correct. So how can that be wrong if it's an application of a Supreme Court holding? First of all, the word wireless does not appear in the claim. And the district court impermissibly, in our view, took out the word wirelessly from the claim. Wait a minute. You said the word wirelessly does not appear in the claim? The word wireless does not appear in the claim. The adjective wirelessly does. Yes, wirelessly transmitted, I guess was the phrase. Well, that's part of the phrase. And part of our position is that the entire phrase was not properly construed. And I'd like to point this out to the court, if I may, very briefly on the claim language. First of all, the word wirelessly, as the district court noted, they relied almost entirely on the preamble of the claim. These are apparatus claims. And they gave short shrift, if any shrift at all, to the structural elements beyond the word comprising. And if you look at Benvenu, BMS. When you say they, I don't understand who you're referring to. I'm sorry. The lower courts did not give any consideration or very little or the wrong consideration to the structural elements of the device as an apparatus claim. I thought that's all that the judge did. I thought the judge said that the structural difference is whether you have a wire connecting to the amplifier speaker or whether there's transmission through the air of radio waves. I'd like to know the wire is structure and antenna in lieu of a wire is also structure. So I don't understand your argument if you're saying that the judge erroneously construed these claims as if they were method claims rather than claims drawn to structure. I'd like to answer that by referring to the specific language of the claims. You're referring to the fact that after it says wirelessly, then it goes on to what looks to me like a different issue. No, before it says wirelessly, it says in claim one in the structural limitations portion of the claim, not in the preamble, which we say is superfluous and doesn't describe any structure at all. A transmitter for wirelessly transmitting said electrical signal. It clearly sets forth the function of the transmitter. I would also like to refer to claim 22. It's a type of transmitter, isn't it? It could be a type of transmitter. The lower court never construed the word transmitter, the term transmitter. Well, was there some dispute about what a transmitter is versus non-transmitter type apparatus? It was not part of the summary judgment motion. So there would be no need then for the district judge to construe that word. There was no dispute about that word. There was no dispute that there was a transmitter there. Our argument is that the words for wirelessly transmitting modify and describe the function or the purpose of the transmitter. And you cannot take that word wirelessly out of context without disregarding what a transmitter is. And to know what a transmitter is, there was no dispute. It just never came up. The record is bereft of any reference to a transmitter and a claim construction of what a transmitter is. I'd like to just quickly— Well, wait a second. Well, then where's the error? I'm trying to get my finger on where did the district judge err in construing and applying this particular limitation captured in the phrase that includes the adverb wirelessly? It erred by separating, as the court says, which we disagree, the wireless limitation by separating it from the transmitter and saying it's a separate limitation, rather than saying that a transmitter transmitting through a wire may be equivalent to a transmitter transmitting wirelessly. And let me just—I really would like to make this point on Claim 22, which the court almost totally ignored. They only referred to—I mean, the lower court referred only to the preamble of Claim 22, where it said— That isn't true, is it? I'm sorry. Okay. I didn't see any discussion of the element, the corresponding element of Claim 22, where it says a transmitter, said transmitter transmitting wirelessly. Now, obviously, the transmitter transmitting wirelessly is how the transmitter functions. What is your point? That the phrase wirelessly is meaningless? No. And therefore it should be ignored? Not at all. Well, then doesn't it have to define the kind of transmitter? Yes. Okay. But that was not done by the lower court. Pardon? But that was not done by the lower court. Well, it wasn't disputed by the parties. It was not part of the summary judgment motion. Well, that's how the disputes get framed, by the summary judgment motion and the opposition in response thereto. So it seems to me it's a hard argument for you to sustain that there's reversible error in the failure of the district judge to separately construe the word transmitter when neither party proposed construction of transmitter. That's not what we're saying, or not precisely what we're saying. We're saying that the term wirelessly needs to be construed in conjunction with the transmitter. Are you saying, Mr. Walmsley, that the word wirelessly, as it's used in the preamble, only is describing the action of the transmitter? In the preamble, it talks about the device. Because that's the point. Please correct me if I'm wrong, but what I hear you saying is that we should only think of the word wirelessly with respect to the transmitter. But in fact, though, as you just noted, in the preamble, it says a device for wirelessly transmitting. So we're talking about a device with all its components, including the transmitter, that transmits wirelessly. The question becomes, is the preamble a limitation or not? In the cases that we have cited, when an apparatus claim specifically lays out all of the components, the structural components of the apparatus, the preamble is superfluous and does not have any weight. That's why we refer to the claims lay out eight structural elements. What then is the purpose of the preamble here? It seemed to me to frame the whole invention. You list components that you'd find in many types of inventions of this kind, or devices of this kind. And then there's this, oh wait, by the way, all of this is for wirelessly transmitting. It does provide a description of the invention, but it is not vital to the claim as far as the claim elements and what the applicant is actually claiming as the components of its invention. But even if we ignore the phrase about wireless in the preamble, in the body of the claim, there's nearly identical language repeated. With respect to the transmitter, that is correct. So I don't follow your point. I think I'd be prepared, at least for sake of argument, to ignore the preamble use. But I don't see how the use in the body can be ignored. It's a limitation. It's a statement of function. Yeah, but that makes it a limitation. Yes. A structural limitation. Even if you come out that way, I mean, again, our position is, it can't, it modifies, these are adjectives, these are adverbs, these are not strict structural, expressed structural limitations. All of the cases cited by the court. Well, then are you saying we should ignore the phrase that is built around the adjective, adverb, wirelessly? No. You should, the court, that's why we're not here under little infringement, but doctrine of equivalence should not be ignored. But in construing it, our argument is it's the proper claim construction is whether a transmitter transmitting through a wire is insubstantially different from a transmitter transmitting. Yeah, but we don't get to that question. That's the Graver-Tank analysis. That's correct. If there's a missing limitation under Warner-Jenkinson, that's step one, is to see if there's a missing limitation. If there isn't a missing limitation, then you ask the three-part Graver-Tank question. Right. And you seem to want us to bypass the first mode of analysis and immediately proceed to the tripartite identity test of Graver-Tank. I don't think that Warner-Jenkinson allows us to do that. Plus the fact that there is no testimony, no evidence of interchangeability. A claim element is not vitiated if an equivalent covers the same function. And the court precluded, I don't know what my time is. Is this set for 11 minutes? You have two minutes and 37 seconds. I reserve four minutes for rebuttal. Well, you're using some of it, so perhaps you'd like to retain the rest. I think I would. Thank you. Very good. Thank you, sir. Mr. Burke. Good morning, Your Honors. I'm Daniel Burke. I'm here with my associate, Georgia Donwalkies. We represent the defendant, IVL Technologies. Do you consider that Mr. Walmsley is trying to make an argument that was not made in the briefs? Yes. And not preserved below either? It was not argued below, and it was not raised in the open. So then I suppose you'd say doubly waived. Doubly waived would be exactly how I would say it. Okay. Now, if we disagree with you on that, then what? Well, then we have to go on. One of the first cases that Mr. Walmsley cited was the— Excuse me. I read my long pad. Excuse me. In arguing that the function—excuse me, that a language in the preamble should not count and should not be given any weight, in their reply papers for the first time, they cited the case of Allen Engineering. Now, Allen states that a preamble may be limited when the claim drafter chooses to use both the preamble and the body to define the subject matter of the claim's invention. Now, when the drafter, Mr. Walmsley, submitted the final amendment to the Patent Office, wherein he inserted the wirelessly limitation not once but twice into each of the independent claims, he specifically stated, and I'll refer to the appendix page A213, he said that those amendments were made to more clearly set forth that which applicant regards as his invention. What's your point? My point is that— That it wasn't for patentability purposes or— Well, it was for patentability purposes in that, according to Allen, the preamble— The preamble language should not be given weight. That's my point. You say that we should look at both the final limitation and the preamble. Right. And I would say it another way. You raised the point earlier when Mr. Walmsley was speaking, but I think it's a catch-22. He argued that the preamble was superfluous, so it shouldn't be considered, but then he argued that the last paragraph of the claim should also not be considered because it was functional. Because it was functional there, then it wouldn't be superfluous with respect to his argument on the preamble. Now, when you cite the statement of the prosecuting attorney about more clearly setting out the invention, wouldn't you agree that that is directed to the requirements of Section 112, not the sections of the Patent Act dealing with prior art like 102 and 103? There was an interview between the prosecuting attorney and the examiner and the examiner's supervisor. We don't have much of a record, but the prosecuting attorney was facing arguments of obviousness. He was making the changes presumably to overcome those rejections of obviousness, and he also submitted additional evidence of commercial success. So then your argument, I guess, is that he necessarily was addressing prior art. Yes. Because there were already rejections based on 103. Those were the only rejections he was addressing at that point. Why do you suppose he used the 112 language rather than saying more directly, I'm overcoming the 103 obviousness rejection by narrowing the claim by adding the limitation X? A prosecuting attorney never wants to make that admission that he's doing something to overcome prior art because it gives him less wiggle room down the road when he's in court. This case was started. So in referring to the prosecution history, I guess you're saying that if we don't rely on Warner Jenkinson and we don't rely on Graber Tank, that we could rely on Festo and the other cases dealing with prosecution history estoppel because you, in effect, are arguing that this amendment was clearly intended as a narrowing amendment. I want to be clear. I don't think you have to go to prosecution history estoppel. I raised the point about the prosecution history because of the claim, excuse me, because of the law cited by the appellants with respect to whether the preamble should be given later. The district court properly relied upon the specific exclusion principle. And then he went on. He was very thorough. He applied the triple identity test and found that there was no way a reasonable jury could find that a wired device of our clients was equivalent to the wireless device. The defendant's position in the summary judgment papers, and we cited this in our papers, their response was basically that if you had a beach and you wanted to use their device and broadcast to 50 different radios at the beach, we could just use long wires. That position is absurd. It's illogical. The district court told him in his opinion that it was absurd and illogical. What they've done with this case from the beginning, even before the beginning, they were informed that the defendants did not use wires. Nonetheless, they brought the action. They dragged the action out for two years and basically created a Well, what's the relevance of all that? We don't have a Rule 11 or other similar sanction issue before us. As I understand it, by motion, the only thing we have before us has to do with the appeal, not the trial level litigation. So the length of it, two years and this and that, are all irrelevant because there's no issue before us dealing with the trial level. Well, in light of that background, the appeal extended and maintained that clout over the defendant's commercial products for another year. The Rule 11 proceedings have not been, I saw a reference somewhere, the Rule 11 proceedings are still pending in the district court? That's correct. The judge hasn't ruled on that yet? That's correct. Initially, we wanted to bring a joint motion for summary judgment and Rule 11 when this case was first brought. That was in December of 2004. The judge said, no, I want to handle the summary judgment first. There was some discovery and we finally got to the summary judgment decision, which was issued just about a year ago on August 30th. And it's just the way the wheels turn, you know, it's taken about a year to get to this point. But I'm right, you have a pending separate motion here? We do. For Rule 38. And I'd be happy to address that if the court is. Why don't you do that? Ron, we think that the appeal is frivolous, specifically as argued, because there were four issues stated on appeal in the appellant's opening brief. Three of them could only be related to prosecution history estoppel. The district court noted three separate times, not once, not twice, but three separate times in his opinion, in three separate footnotes, that he was not relying upon prosecution history estoppel. Nonetheless, the appellants have devoted most of their papers, both their opening brief and their reply, to arguing prosecution history estoppel. What conclusion does that support, that part of their brief is frivolous and part of it's not frivolous? Well, three of their four points were related to prosecution history estoppel. So that's frivolous. The fourth point was making an argument that's totally unsupported by law, stating that the specific exclusion principle only applies to binary choices. They cited a Velcro case where Velcro, the claims, if I have it straight, said that the hooks face in opposite directions and the accused device, the hooks faced in the same direction. That's not a binary choice because the hooks could be facing perpendicular. The district judge did say in that one footnote that you could reach the same, he would reach the same conclusion if he wasn't analyzing it under prosecution history. He absolutely did. He absolutely did. He just didn't need it and he didn't go there. But when you say he didn't need it, I see the footnote saying he doesn't need it. But it looks to me like he did, to use your phrase, go there because he did a fairly full analysis of prosecution history estoppel, starting at page 12 of his opinion and going on for several pages. So it looks to me like he made a ruling, even though he indicated that that ruling wasn't necessary to the outcome because of the prior rulings he had made on alternative grounds. But he did make a ruling, I think it's fair to say, and it is being challenged as part of the appeal before us. And it seems to me that we certainly could appropriately reach it. Whether we have to reach it maybe is a different question. Are you trying to suggest that we shouldn't reach it as well as, in your view, it's frivolous to even argue it? Since he didn't rely on it. Yes, I don't think you have to reach it. And I do think it's frivolous. Where does he say he didn't rely on it? I see him saying he doesn't have to rely on it. But that's not quite the same draft as saying he didn't. Apparently in footnotes 3, 5, and 8, I believe, which are on pages 14. Thank you. What he says in the penultimate sentence at the end, at the bottom of page 15, is prosecution history estoppel is not necessary to decide this motion. But it looks like he does make a ruling on prosecution history estoppel. So for you to then say, well, for them to challenge that ruling with three quarters of their points, three out of four points is frivolous, I'm not so sure it's easy to agree with that. If there is a ruling that's an alternative ground of granting summary judgment, how can it be frivolous for that ruling to be challenged on appeal by the appellant? It's not. It was not an alternative ground. If you look at the last footnote on page 23. How about footnote 5? Excuse me? How about footnote 5? I guess I'm wondering why you're afraid of it. Excuse me? I guess I'm wondering why you're afraid of it. Not afraid of much, Your Honor. You're talking about footnote 5. Nonetheless, it appears that prosecution history estoppel would also serve as a successful defense to infringement. Well, he starts out. I guess you have to read. There are three footnotes that say he's not reliant upon it. I know. He does say that. He does sort of throw this in, that if he got there, he thinks that would be his leaning. But he didn't go there. He didn't rely upon it. He relied upon the specific exclusion principle, and he relied upon the triple identity test. And that's all he really needed. To make their point, they'd have to totally vitiate the claim limitations that appear twice, not once but twice, in each of the independent claims. He really didn't rely upon it, so the argument, I think, is frivolous. I understand that you're saying he didn't rely on it. Are you also saying that he never made a ruling based on prosecution history estoppel? Yes, that's our interpretation of footnote 5. It's not a ruling. But didn't he kind of put it out there, and he said, well, isn't the inference or the suggestion here that, well, if you don't agree with the other one, this does the job also? I think what he's saying is that if he got to it, he's leaning. He thinks it would apply. As we do, because there was extensive discussion. Okay. On the fourth point, or maybe it's the first point, the one out of four that doesn't deal with prosecution history estoppel, are you maintaining that that argument is also frivolous as argued? Yes. It's not supported by any law. I can call that like they're saying that in order for the specific exclusion principle to apply, you have to be in a binary system. You have to only have two choices. And your interpretation is it's not quite that rigid as to require binary or dichotomy? Correct. And I cite you the cases. I explain that by using the cases that they cited. The Velcro case where the hooks could have been disposed at a perpendicular or there was a minority. What's the relief you're seeking in the sanctions motion? I want to be very clear here, too. We want a full attorney's fees. We think that anything less. What's the approximate dollar figure? For the appeal? Yes. Well, that's all the rule 38 motion can cover. So, yes, for the appeal. Including the motions, about $85,000. All right. This case has been run very efficiently to this date despite its three-year life. The expenses in the district court were not much more than that. All right. Thank you, Mr. Burke. Mr. Walmsley, you have a couple minutes left. Over two minutes. Thank you. I have a short time. I would like to specifically address the lower court's review of the prosecution history in order to arrive at the specific conclusion principle. And this is outlined in our reply brief and our moving brief. Basically, the court did consider that, considered an amendment to the claims, and it was wrong. And I'd like to point that out. The original claim, and here again, this is set forth in our reply brief, said, you know, a transmitter transmitting, I'm paraphrasing, an RF signal. No, means for transmitting an RF signal for receipt by a radio receiver. The lower court. This is the point that it was really a broadening amendment, not a narrowing amendment? Yes. But what he said, what the lower court said, was that covered a wired and a wireless transmission. Incorrect. There's no basis for him to say that. There's no factual evidence or anything that says a radio can receive anything other than a wireless signal. So when we substituted in the last amendment the phrase, a transmitter for wireless transmission, we did not narrow the claim. We did not change that with respect to what was already there. Nevertheless, the lower court relied on that to say we have explicitly excluded the wired signal. Do you want to respond to any other points that Mr. Burke made? Yeah, the Velcro case, and this is one of the cases that was mentioned in the court. But it doesn't bind us anyway. I understand. But the point is, when you're looking at the all elements rule, in all of the cases that I've seen referred to and cited in this case, there's explicit structural language in the claim that the court says, okay, this is set forth and you can't have the opposite or that it vitiates it if you have something else. This is not the case here. Here we have language of function and purpose that were transformed into structural limitation, which we disagree with, that that should be done. It's the first case we've seen of this nature. We don't think the decision should stand for that type of claim construction. And lastly, I would argue proper claim construction, no matter when it is, is raised, and we would ask the court to properly construe the claim or directly. Do you want us to construe the claim? Or direct the lower court to remand it. So you want us to remand, reverse the summary judgment, remand, and order the district court to start all over again with some sort of a markman hearing? I understand, Your Honor, that I have to address the proceeding in the court below. The proceeding in the court below was totally colored by the decision. I'm just asking what precise remedy you want. We need to develop the case. Meaning what? That you want us to, if we agreed with you to reverse the summary judgment, to order the district judge to construe all the words in the whole claim? To allow discovery of the key issues. Oh, to go back to discovery. Yes, because there was no discovery. Why isn't that waived? No one asked for more discovery before the summary judgment motions were adjudicated? The word red herring and sandbags come to mind. Defendants represented to the lower court, they don't infringe because they don't have a transmitter. The lower court allowed us limited discovery on the transmitter, and then defendants brought their motion because they're wireless. There was no discovery. There's no depositions of the engineers to see what is substitutable or in substantial difference. What would you do with the later office action where the patent examiner said that he wouldn't allow you to redo the patent? I'm sorry? The September 2003 office action? Okay, that's in the reissue? Yes. Where specifically rejected it on the ground that you couldn't include wired? Basically, the lower court, excuse me, the patent office said that we were recapturing, and we've had many discussions with them. The result of it was that we have filed a continuation on those claims which stand rejected for that wireless, and we're planning to appeal to the Board of Patent Appeals and Interferences on that because we disagree. Again, they say it was a narrowing amendment, and as we've argued everywhere, no, it was a broadened amendment, and there was no recapture. All right, we thank both counsel. We'll take the appeal under advisement. Thank you.